Roberts, and may it please the Court, the question in this case is whether a FOIA response is a report or investigation within the meaning of the False Claims Act's public disclosure bar. Our position that it is allows the Court to reach the critical question whether  or not the public disclosure bar is intended to prohibit is that the public disclosure bar is intended to prohibit. The position taken by Mr. Kirk and the government would disallow the public disclosure bar before reaching that critical issue, and it would therefore lead to a host of lawsuits by relators with no meaningful information to contribute, and that is precisely the result that the public disclosure bar is intended to prohibit. Now, I don't think that's the case. Ginsburg. But suppose the FOIA information is just to confirm, to back up, to fill out. The relator suspects there's a fraud going on, and he thinks that the fraud will be documented by filings that the alleged fraudulent party has made in the government. Justice Ginsburg, that may well be a legitimate use of a FOIA request. And the question then becomes whether the information disclosed in the FOIA response reveals the allegations in transactions upon which the Keith-Ham suit is based. But that question, that use by a relator of the FOIA process doesn't go to whether or not a FOIA response is itself a report or investigation within the statute. A relator can still escape the public disclosure bar if the relator can demonstrate that his complaint is not based upon the allegations in transactions that are disclosed in the FOIA response. Ginsburg. So in each case, we have to tell, was the False Claims Claim, was it so heavily dependent on FOIA disclosures, or was the FOIA disclosures, they were a minimal part of the? Precisely, Justice Ginsburg. In fact, what a court should do is precisely what the district court did in this very case in a very thorough opinion. Judge Stein went through every element required for the public disclosure bar to be invoked, including whether the FOIA response was a report or investigation, including whether Mr. Kirk's complaint was based on allegations in transactions disclosed in that FOIA response, and concluded that every prong of the disclosure bar was met, and therefore, the public disclosure bar prevented Mr. Kirk's claims. And that is precisely the analysis that we contend ought to happen. Under the government's position and Mr. Kirk's position, you never get to the critical inquiries about whether the allegations in a relator's complaint were publicly disclosed in a report or investigation, because under their view, a FOIA response itself is rarely going to qualify as a — as an administrative report or as an administrative investigation. We think that view is plainly incorrect under the ordinary uses of the words report or investigation, a position that was obviously found to be the case by the First, Fifth, and Third Circuits. Ginsburg. If I — if I submit a, as we, all Federal judges do, financial disclosure statement to the administrative office, and then someone from the press has a Freedom of Information Act request to see that financial disclosure statement, does it then become — does it become the report of the administrative office rather than my report to the administrative office? Justice Ginsburg, that's an interesting question. Whether — and some lower courts have held that if the Federal — if the report — even though the report is filled out by a nongovernmental person, such as yourself in this instance, it might still qualify as an administrative report because the information being sought is dictated by a Federal administrative agency. Now, we don't think you have to reach that position for — for Schindler to prevail here, because the one thing that is clear is that a FOIA response by the Department of Labor is itself an administrative report or investigation. It is a Federal office. Kennedy. Suppose that in this case the agency had said, well, we have ten files where these documents are and we'll make them available to you in the reading room. You go to the reading room. Is that a report? Justice Kennedy, if the agency has exercised some selectivity in terms of what it's put in that reading room, we would argue that it is a report. That's a far cry from what we have here, but that's a much closer case. But with respect to FOIA responses, the third way in which information is disclosed by an agency under FOIA, it is always in response to a specific FOIA request. The FOIA response constitutes the agency's official response to that request. It's subject to appeal, appeals — even subject to appeal in the Federal courts. And this Court has said itself has absolute basis. Kennedy. Well, I don't know if the files are digitized or not, but if they want this particular veterans report, suppose you could just push a button, they all come out? Is that a report when those veterans' documents are just put together in a rubber band and shipped off? It certainly is a report. A report is any officially sanctioned notification. I'm an understander. Well, it doesn't sound like in normal parlance if you come to an agency and say, I want these documents, and the person comes down and says, here they are, he's not going to say, here's my report. He's going to say, here are the documents you asked for. This is our response. Mr. Chief Justice, it is a report in the following sense. The agency is saying, one, we have these documents. Two, these documents are the very documents you're asking for. That is the very documents you're asking for. There's information facts that you can glean from their action, but that doesn't make what they've done a report. Well, with all due respect, Mr. Chief Justice, I think their response in handing over the documents, saying these are the documents, is a report, that we have these documents, here are the documents you've requested. Now, of course, Sotomayor So that means that if they tell you go look for it on the website of X agency, then they are incorporating everything that that other agency has as part of their report? It's not a response in telling you how to find what you're looking for? It is a report in the sense they are reporting where to look for it. That is a far cry from the FOIA responses at issue in this case and most FOIA responses. In this case, there were three different FOIA responses at issue. The first two FOIA responses have two important pieces to them. They say, one, for certain years we couldn't find any of these Vets 100 reports. We don't have them. We do have them for other years. Those responses communicated key facts upon which Mr. Kirk based his Key Tam complaint. He alleged that in six of the years, six of the nine years at issue here, his allegation is Schindler never filed these required Vets 100 reports. The communication by the Department of Labor, we don't have those reports in those years, was the sole basis on which those allegations are made, and it's clearly a report. The report is, we don't have those reports. Is your position that sometimes it can't, a FOIA response can be a report, and other times it's not? No, Mr. Chief Justice. Our position is that every FOIA response is itself a report. Many will require an investigation, but every FOIA response is itself a report within the ordinary meaning of the word report, which is a notification. There are news reports. There are weather reports. There are traffic reports. There are, as in this case, Vets 100 reports. They are all reports. So there's no difference between a report, the government has an investigating commission, and it works up a report, as opposed to the many government agencies that are just repositories. They accept pieces of paper, reports filed by other people, like a tax return, like financial disclosure. The agency does nothing, has no input. I mean, there's surely a difference between those two kinds. One, I would say, the natural understanding would be, it is a report by the person who's filing it to the agency, and the other, where the agency puts personnel to investigate an issue, is a report of the agency. And you seem to say, no, they're all reports of the agency. Justice Ginsburg, let me be clear. If the agency simply had an open-door policy, just filed everything in a room and said, in response to a FOIA request, those documents are publicly available, you go in and search our files, figure out if those reports are there or not, that agency response would not be a reporter investigation. The response simply says, do the search yourself. We may or may not have a file. Ginsburg. Let's take this very case. I'm asking you, isn't there a difference between saying we want the raw filings, we want what Schindler filed, we don't want the government? We don't want the government to do any investigation, we want them to do just the mechanical thing that they do under FOIA, and an agency saying, we're going to investigate and make a report. We're going to put our people, they're going to be investigators, they're going to interview witnesses, they're going to examine documents, and we'll make a report. That's how I understand a government report, but it's very hard for me to understand how a report by Schindler becomes a government report simply because it is filed with the agency. Justice Ginsburg, we think that reports and investigations can certainly vary drastically in degree and kind. An antitrust investigation may require millions and millions of documents and take the Justice Department 4 years. On the other hand, if the Department of Labor itself had decided to determine or to investigate whether Schindler itself had filed these Vets 100 reports, it would have done exactly what it did in response to Mr. Kirk's FOIA request. It would have — it went to his request, started out with the Department of Labor Office of Information. It was sent to the Division on Investigation and Compliance, located in a completely separate building. The response to his request was delivered by Mr. Robert Wilson, who is the chief of the Investigations and Compliance Division. His activity clearly constitutes an investigation, and the results that he gives to Mr. Kirk is clearly a report. There may be many other agency activities that are far more detailed, far more complex, but it doesn't make what is done in response to a FOIA request not a report or investigation. They are still reports and investigations within the ordinary meaning of those  Alitoso, is the question whether the documents that are turned over themselves reports or whether they are included in a report? I thought what E-4 said was that you determine whether it is in a congressional administrative or accounting office report. So suppose the Department of Labor issued what everybody would concede is a report, and appended to that certain documents. Wouldn't those documents be in the report, even though they are not the report themselves? Absolutely, Justice Alito. When a FOIA response says, as it did in this case, we didn't find certain documents, we did find certain documents, here are the documents we found. The attachment of the documents is found as part of the report, but the report is a complete report. We didn't find some things. We found these things. Here are the things we found. They meet the description of what you asked for. The documents being attached are clearly part of the report. Now, we think that the position taken by the government and the Respondent also creates fairly serious dislocations. Under the definition of report advanced by Mr. Kirk and the government, many things that are actually called reports by statute are not reports. The Department of Labor's effort to the Department of Labor reports that it is required to file, detailing its oversight and compliance of VETRA, of EVRA, statute issue here, is called a report under Section 1354. The report that every agency must file under the Freedom of Information Act, detailing their activities and their compliance with FOIA, itself called a report under the Freedom of Information Act, that is not a report under the definition advanced by the government and Kirk, because they require some element that appears nowhere in the public disclosure bar. They require an element of some kind of search for wrongdoing or fraud. That definition appears nowhere in the public disclosure bar. Ginsburg Well, we'll find out from them if that is what they, that's their position. I had not read them to say that. I read them to say only to challenge your position that every FOIA response is necessarily a report for purposes of the False Claims Act. Kennedy Yes, Justice Ginsburg, but their response is that certain FOIA responses will constitute a report or investigation depending on the underlying documents that are disclosed. Ginsburg If you request a report, then you get a report. But their test for the underlying documents is effectively the resurrection of their on-the-trail notion that this Court rejected only last term in the Graham County case. They infuse that requirement, the report requirement, with this notion that the government has to be looking for something wrong. And if the report that is disclosed along with, as Justice Alito points out, the FOIA response is a report that indicates the government was looking for something wrong, well, that's a report. If it doesn't indicate that, it doesn't qualify as a report. We think that crabbed definition of report is not the ordinary definition of report. And this Court has said innumerable times, including I've heard even today, that court looks to the ordinary regular meaning of terms. The ordinary meaning of report clearly encompasses every FOIA response. If there are no further questions, Mr. Chief Justice, I would reserve my time. Roberts Thank you, counsel. Mr. Willens. Willens Mr. Chief Justice, and may it please the Court, Schindler is asking the Court to construe administrative report far too broadly. In its view, the public disclosure bar would apply to all FOIA documents, regardless of their content. It would also apply to nearly all other documents created or disclosed by the government. This construction of the bar would seriously undermine the operation of the False Claims Act. Congress amended the Act of 1986 to encourage whistleblowers specifically to use government records in their investigations. This Court recognized that objective in the Hughes Aircraft case. Roberts Most of the – maybe I'm – maybe this isn't correct, but many FOIA responses include more than just turning over the documents. They've got a privilege log or other things, this exemption applies, here's a document, but these are things that are blacked out and they tell you why. Is that a report? Willens No, Your Honor. If it's a FOIA response, it's not a report. The documents here are very, very typical of a low-level FOIA response. And this Court, of course, gets more complicated FOIA cases with their First Amendment issues and national security issues, but this is a very, very standard FOIA response. And the letter, which is in the record, is a very typical FOIA response. It's a form letter with three paragraphs, we got your request, here's what we found, you can appeal if you want to. They're all the same. So for this purpose, it's useful just to look at this one, that there's always a possibility that a FOIA officer will uncover something else, a sign of wrongdoing, for example. But that, at that point, it becomes not a FOIA case anymore, not a FOIA process anymore. FOIA is very limited to just the finding and releasing of documents. And for that reason, we think that this is a very typical FOIA response. Roberts, but it's not really, because it does get into the assertion of exemptions and privileges and things of that sort. And why isn't that a report of somebody's evaluation of the particular documents that are being released? That all the work that Your Honor described goes into whether or not that document should be released. And under the False Claims Act test, the release of documents is only the first test in the five-part public disclosure bar test. FOIA just moves the document from the government files into the public and satisfies the first prong of the test. But the Second Circuit said that the second part of the test requires an examination of the individual documents that are being released. Alito, could we talk about the test that you propose? You say that a report is a usually formal account of the results of an investigation given by a group or person authorized to make it, right? That's right. And then an investigation is most reasonably understood as an official probe into fraudulent conduct. That's correct, Your Honor. So if a report does not investigate fraudulent conduct, then it isn't — if something does not involve information about fraudulent conduct, it's not a report. We wouldn't take that hard a line, Your Honor. The material you're quoting comes out of the dictionary, and we were looking for a good dictionary — it's based on dictionary definitions, I mean. We were looking for a good, reasonable definition to come out of Webster's dictionary. We're asking the Court to adopt the Second Circuit's definition, which is broader, and doesn't have an explicit requirement of investigation into fraud. And we certainly aren't asking the Court to rule that all the standard administrative reports that agencies issue all the time are not reports. But it's very useful in a close case where the document doesn't say this is the administrative report or the report of staff on a particular issue. It's very helpful in a close case to look at the context of the statute. Alitoso, what could I ask you about a document to which your adversary referred? The Department of Justice and all of the other departments are required annually to issue what are termed Freedom of Information Act reports. Now, is that a report under the False Claims Act? Yes, it is, Your Honor. And we've argued that because the FOIA uses the word response for the documents we're talking about today and uses the word report for that document that goes to Congress, it must have understood those words to mean different things. This report is — doesn't seem to involve a process that's any less mechanical than responding to a FOIA report. It's basically a compilation of statistics, how many requests were filed, how long it took to process them, exemptions that were claimed, and so forth. So what's the difference? Well, FOIA is a special case, Your Honor. That's the first difference. It only looks into whether or not documents should move from government files into the public. And we're suggesting that because there's such a strong government purpose in encouraging whistleblowers to bring those documents out, that in order to give meaning to the list of enumerated sources here, you have to look at what the documents are there that are coming out. You can look at this FOIA cover letter, and I think you'll see that it doesn't have any substantive content to it. It just refers to the investigation or it refers to the FOIA search that was — that took place here. There are a lot of reasons — sorry. Scalia, give us your definition. You say you're not standing by the dictionary definition that was read here. What is your definition? It's not just reports of investigations into fraud. What else is it? On the investigation side, it's a definition — the definition is a focus and sustained inquiry toward a government end, a substantive government end that would have to do with the policies and practices of the agency, that is, uncovering noncompliance or assembling information about a policy program or something like that. We're trying to distinguish that. Do you know any dictionary that gives that definition? I mean, the advantage of the Petitioners is they use a dictionary definition. Now, it may be a very broad one and you don't like it for that reason, but it is the way the word is sometimes used. It is, Your Honor. I don't know any dictionary that would define the word the way you say it. That's the Second Circuit's holding, Your Honor, and that's exactly why we spent a large part of our brief explaining why there's a better dictionary definition than the one that Petitioner uses. One important difference. Ginsburg-McGillivray Can you point us to the page so we can see the Second Circuit's definition of report and the Second Circuit's definition of investigation? Verrilli, I'm not sure that I can do that, Your Honor. Ginsburg-McGillivray Well, I don't want to eat into your time. I understood the definition that I read to be the position that you were advocating, not simply some dictionary definition, some definition that happens to appear in the dictionary. I understood that to be the test that you were saying we should adopt. Am I wrong? Did I misread your brief? Verrilli, We believe that that's a good definition that could be used, Your Honor. But the trouble is that there's not going to be any dictionary definition that covers all the innumerable ways that administrative report can be used. And I wanted to just answer your earlier question to say that, of course, there are standard administrative reports at agencies' issue. The courts below have been resolving this kind of issue outside the FOIA context for 25 years since this statute was passed without any serious trouble. Alito But if we adopt your definition, isn't it true that a lot of things that are labeled Department of Labor report, Justice Department Freedom of Information Act report, are not reports? Verrilli, Yes. Your Honor, and that's why I've told you that the Second Circuit's definition, if you're looking for an overarching definition, is a better one. The trouble that Alito So you're withdrawing from the definition that you proposed in your brief. Verrilli, I believe they're both helpful, Your Honor. And I also believe that the Second Circuit's definition covers all of these kinds of reports. But there's no need for this Court to issue its own definition. There's another way of resolving this case, which is simply to answer the question of whether FOIA responses, which are unique in many respects and have their own statutory and regulatory structure, are administrative reports or investigations on their own terms. Sotomayor Don't we have to say why? Don't we have to say why they are? Verrilli, Of course, Your Honor. Sotomayor And once we have to say why, we're getting into the need for defining what a report is. Verrilli, Well, it would be possible. Sotomayor We don't usually just say yes, no. You know, we usually give reasons. Verrilli, I agree with that, Your Honor. But point two of our brief is an explanation of why it makes sense not to have a categorical rule that every FOIA response and all of its attachments are always administrative reports and investigations. And I submit you don't have to define administrative report and investigation for all purposes in order just to answer that narrow question. For example, the word investigation is used in the False Claims Act for a very specific kind of investigation, a law enforcement investigation. And a FOIA search, which is defined in that statute as a review, is not an investigation. Scalia, Well, let's talk about the purpose of the statute. Surely that should bear upon how you read, what you read the words to mean. I had thought that the purpose was, as Petitioner's counsel said, the purpose was to allow people to bring KETAM actions who have their own information. And who are not just relying on information that they — that is not personal to them. Is that accurate or not? Verrilli, No, Your Honor. The statute has always encouraged both insiders and people who are dealing with second-hand information. We used to call private attorney generals to go out and do their own investigation. And Congress amended the statute in 1986 to encourage those people and insiders like Mr. Kirk to get documents out of the government files that they need as evidence to support their case. The case doesn't lack merit simply because the whistleblower needs additional evidence to prove his case in court. And FOIA is a critical aspect of that because relators frequently don't have one piece of information, which is what the corporation said to government contracting officers. That is, Mr. Kirk, for example, knows operationally. He knows that every contract Schindler had for 15 years was breached because they were not following this key contractual provision to apply to that people. He only knows that because of the FOIA response, because the agency said, we don't have any reports for those 5 years. Why isn't that information from the agency, a report by the agency that we don't have any documents from those 5 years, and therefore your client says they didn't file documents for those 5 years? There were a few statements wrapped up in that question, Your Honor. But the point I'm trying to make is that Mr. Kirk has a vast amount of inside knowledge about this breach of contract that was going on for so many years, and it's different from the notification requirement. That's what triggers the False Claims Act liability, but it's different from saying that there was a fraudulent scheme going on for 10 or 15 years that damaged the government, damaged the veterans employed by the company, and undermined the whole purpose of EVRA that requires it to be in these contracts. Sotomayor, I think you've just divided up two issues. The first is the FOIA letter does tell you that there weren't reports for certain years. The word is that reports were not found. Found. Now, the issue is different from whether the ones that were found were false or not. Is that correct? That's true. And I'd say it's also different from the issue of whether they were filed, because the fact that the agency didn't find them during a cursory review of its records, which a reasonable review of the records is all it's required to do. In a compliance investigation, of course, it would go on much further. It would look to see if the documents were filed somewhere else. But your client asserts that they weren't filed. And on the basis of no other information except this FOIA response. It's not no other information, Your Honor. It's a pattern in practice. How else does your client know that there were no reports filed for those years, which is part of the claim here? He knows that Schindler did not collect the information that it would have needed in order to file accurate reports. He wasn't there during those years, was he? He was only not there during the very tail end of our period, which runs from 1999 to 2005. He was there and he was fired or let go in the middle of 2003. So he has personal knowledge of all of that failure to collect the information. The question then is whether Schindler filed false reports or failed to file them at all. And he alleged, without reference to the FOIA response, that it had to be one or the other, and either way it's going to be a violation. And that's sufficient at this stage of the case. We're at the 12b1 motion, Your Honor. I haven't had an opportunity for discovery, and we don't know anything else about Schindler's conduct, but it's not correct to say that, well, I think I've answered. Alito, may I ask you why a FOIA response doesn't satisfy the Second Circuit's test? An investigation, the Court says, quote, Now, the government end in responding to a FOIA request is compliance with FOIA. And somebody has to search for these records and determine whether any exemptions apply, and that would seem to be focused and sustained. So what element is missing? There's a missing government end here because all that's happening is the transmission of documents from inside the agency to the outside of the agency. Kennedy, but that's the way that the Second Circuit defined, limited its own definition. But why isn't it, why isn't the Ninth Circuit incorrect, pardon me, the Second Circuit incorrect when it says that this is not a governmental end? It is a governmental end. Obviously, satisfying the requirements of FOIA and its regulations is a government end to that extent, but the Second Circuit was trying to distinguish between the substantive work of an agency and the more ministerial but still important act of taking documents out of files and sending them out to the public. A FOIA officer is separate and apart in most cases from other programmatic officers in an agency because we want to keep that act of taking documents out of the files, we want those documents to go out into the files, into the public. Roberts, the person is separate, but is often dealing on a regular basis with people who have line responsibilities to something else. He sees something, well, that looks like it might be a problem, you know, he gets on the phone or goes down and says, is this covered by the exemption or not? Of course. I didn't mean to say that they don't speak to them. It's just that there's a different line of authority in most cases and it's a different kind of mission. So I hear the question and I understand the problem, but at some point you need to distinguish between what FOIA is trying to do, which is to make documents public, and what the government agency's work is, which is to implement its policies, procedures, sign contracts, build roads and whatever else it does. There's such a strong government purpose in getting these documents out to the public and specifically in this case to relators and whistleblowers that this Court has held 15 — has held almost 15 years ago that that is why Congress amended the statute in 1986 and to tell Congress now, 25 years later, that they made a mistake when they used the word administrative report and they accidentally covered a vast number of documents. They could have used the word agency records, which they used in FOIA to cover everything, but instead Congress chose a very narrow set of enumerated sources, specifically so that other documents would be available to relators. As I tried to say before, that getting those FOIA documents out to a relator is particularly important because it has the correspondence between Schindler or other contractor and the government. Alito, how do you determine which government ends count and which government ends don't count? My only argument is that FOIA is a different kind of mission. That's the only — compliance with FOIA is the only government end that doesn't count. I believe FOIA is a special case, Your Honor, and there are many reasons why that would be the case. We've argued that the plain language of FOIA indicates that a response is not a report, a search is not an investigation. Alito, a report that goes to a department or agency's compliance with some law that is not directly related to the mission of that department, that would qualify as a government end for these purposes, but FOIA is the only thing that doesn't count. FOIA is the only thing that doesn't count. It's like a publishing house or a little clearinghouse inside each agency whose job is to take manuscripts, or in this case reports or audits or hearings or whatever, and take them out into the public. I think it's fair to distinguish between that function, the publication function, and the substantive work of the agency. If you don't do that, then you're heading down a slippery slope, which Schindler eloquently articulated in its reply brief. You end up at a point where not only FOIA documents are covered, but non-FOIA documents, in one case even SEC filings, private SEC filings that are automatically posted to the commission's computer. Schindler seems to think that those are administrative reports. And you've, of course, transformed every private document, like these VETS 100 reports, into public documents simply by the process of corporate filing and then release by the government. There's simply no basis for that in the statute, and it would cause enormous harm to the operation of a statute. Thank you. Roberts. Ms. Sherry. Ms. Sherry. Mr. Chief Justice, and may it please the Court. I want to start with one thing that hasn't yet been brought up this morning, and that is the context. We are not talking about words in isolation. We're not talking about the abstract meaning of the word report. What we're talking about is public disclosures of allegations or transactions in a congressional, administrative, or GAO report, hearing, audit, or investigation. And in that context, the word, the phrase administrative report, the phrase administrative investigation, has some meaning. When you speak of a congressional investigation, when you speak of a GAO report, and when you speak of an administrative audit, that conjures up a certain image that goes beyond the simple search for responsive records and response to it. And your test is, am I right, this is page 21 of your brief, that it has to go to the uncovering of the truth of a matter or inquiring into wrongdoing. Is that your test? I don't think it has to go just to the inquiring into wrongdoing. I think the way to think about it is whether or not the agency or the governmental entity is engaging in a substantive inquiry into and in a substantive analysis of information, of data, of facts. And that's the distinction between what an agency does in response to FOIA. FOIA is a means of public disclosure. It's a method by which an agency grants a public access to preexisting records that are in its possession. It is essentially the public disclosure component of the public disclosure bar, but Congress does not. Alito, the test is whether there's a substantive analysis of facts. There's a substantive analysis of the facts. For example, in the FOIA context, while the agency is certainly pulling responsive records and is engaging in some sort of inquiry into whether exemptions apply and whether the information can be released or should be released, it's not looking at the data. It's not looking at the information that's in that document for its substantive content. Alito, but when the DOJ pulls together at the end of the fiscal year the number of FOIA requests that it received and calculates the length of time they were pending and discloses that in the annual Freedom of Information Act report, that is a report. I think that would be a report under our definition because the Department of Justice is actually engaging with the data, engaging in analysis. And if I'm remembering correctly, I think it also requires, for example, the Attorney General to report on how it's encouraging compliance with FOIA by the different agencies. And so I think in most of those circumstances that it would still qualify as a report. And I think FOIA is quite distinct from that. And if you look at the facts of this case in particular, it demonstrates what the substance of the agency's action is in a FOIA case. It's, again, it's a means of public disclosure. Congress could have enacted a very different public disclosure bar. In 1943 to 1986, there was what was called the government knowledge bar. Alitoson Every report is a means of public disclosure. The Freedom of Information Act report is a means of public disclosure. That's the reason that Congress required it. Sherry That's certainly true, but the public disclosure bar requires more than just the public disclosure. Congress made the extra effort and included only particular enumerated governmental sources. Whatever the line is, we know that it cannot be any dissemination of information from a governmental entity. Alitoson But I'm still struggling to find out what the definition is of a report or an investigation. You say it's a substantive analysis of facts. Does not the person who processes a FOIA request have to engage in a substantive analysis of facts to determine whether particular documents fall within the scope of the request, whether certain materials are covered by exemptions? Sherry I don't think the — two answers to that question. One is I don't think the officer is engaging in any substantive analysis of the facts that are in the records that it's disclosing. But the second answer to that question is if that's all that's required, then I think we're back to a position where every disclosure of information by the government would qualify as a public disclosure. And we know that's not the choice that Congress made. It included only specifically enumerated sources. And it chose particular words. It chose report, hearing, audit, or investigation. It is hard to think of what other words Congress could have used to describe the type of report we are talking about or the type of investigation. Besides those words, Congress had wanted to have a broader meaning. It had a number of other types of words at its disposal. It could have said document, it could have said communication, it could have said record, and then it would map quite well onto what FOIA is, which is the public disclosure of agency records. It didn't do any of that. And so I think we have to give some credence to the choice of words and to the fact that Congress has been wanting to do that. Breyer, imagine here everything is the same. That is, what I imagined happened here is that an individual wrote and asked for a FOIA request, did Schindler Elevator file a certain kind of statement? And you say that's not a report. Now, imagine everything the same, except the person who asks is called Joe Smith and that's a fraud officer for the agency. Everything else is the same. Now, is it a report? No, and sorry, the second circumstance it is, but let me, I answered that incorrectly. The second circumstance it would be, but let me explain the distinction. All right. Now, there's no distinction. You don't understand the circumstance. It's exactly what happened here. Let me, that is not, and that's what I want to explain. That's not, that's not what happened here. If I submitted a FOIA request and said, did so-and-so company file a report, I wouldn't get a response. That's not a proper FOIA request. Breyer. Breyer. No, no, no. It says, please tell me some, any documents that they filed that says da, da, da, something like that, isn't it? Okay. Now, we have the same thing, word for word, except the person who makes the request is not Mrs. Mary Jones from the public. The person who makes the request is the fraud officer for the agency that's worried about being defrauded. And all I'm interested in is, is, are they both not reports? Is one a report and not the other, or are they both reports? The second one would be a report if there was an investigation going on. I'm just telling you the facts. The facts are just what I said. If, if. Everything the same, except he signs his name fraud officer. Then I misunderstood the hypothetical. No.  What matters is the subject of the agency's action. All right. So then if a person who's an outside person gets a hold of two documents, one, the request, and two, the response, which is to say, yes, I found 15 reports, they're all signed by Mickey Mouse, okay, then any basis of complaint, there is no such person as Mickey Mouse, it's a fraud, okay, then you go right ahead and bring the quid tam because it wasn't falling within the exception. Is that right in the government's view? In the government's view, the fact that the information was obtained through a FOIA request doesn't answer the question as to whether the underlying document is an administrative report or an administrative audit or anything else of the sort. The FOIA, the agency's response to a FOIA request, again, is nothing more than the first step. No, no, you're repeating. I'm trying to show you what the problem is in my mind. I can't quite work out the right definition. And that's what I'm trying to get enlightenment on. And the definition, and I will be the first to acknowledge that there may be difficult questions at the margin. I'm not trying to make a difficult question. All I want is your enlightenment about how, when I write these two cases down, should I distinguish them, should I say they're both the same, or what? I think, based on your hypothetical, in both circumstances, if all that is done is the agency has looked in its files to see if it has responsive records and disclosed them, then in both circumstances, that's not a report in the original document. If I say most, in my circumstance, in both circumstances, then it's not a report and there's been no investigation. And I think the words have meaning, and it's significant that FOIA does not refer to what an agency does as an investigation. It refers to it as a reasonable search for responsive records. And this Court's never referred to it as an investigation. No court ever has. And that's because there is a substantive distinction between an investigation, certainly between a GAO investigation, between a congressional investigation, and what an agency does in response to a FOIA request. To give an example, the GAO is not subject to FOIA, but it does, in its regulations, respond to requests from the public much the same way that an agency does in response to a FOIA request. I think it would be a rather strange use of language to think of that as a GAO investigation and to think of the response as a GAO report. Another example, and again, we're talking about ordinary usage, not any possible usage. Scalia, I don't want to have to play these games every time there's one of these key TAM actions. I mean, the advantage of Petitioner's solution is that it's easy to apply. I don't find yours easy to apply at all. It may be easy to apply, but it's easy to apply and it reads out an entire subset of enumerated sources that Congress thought important to include. Ginsburg. Did the FCA, the amendments in 2009, which are not retroactive, so they don't do they have any bearing on this problem prospectively? On a prospectively, not directly, in that the words report, hearing, audit, or investigation are still included, but it did narrowly and further define what that means. It added a Federal context, and so this Court had decided in Graham County that there was no Federal nexus required for the second category of documents, and going forward with the 2010 amendments, there now is. And so on a prospective basis, may I finish? On a prospective basis, State audits, State reports, would not be subject to, would not bar a pre-TAM case unless, if this Court holds otherwise, they're produced in response to a FOIA request. Thank you, counsel. Mr. Rice, you have 14 minutes remaining. I don't think I'll use it all, Mr. Chief Justice. Justice Ginsburg, in response to your request, the new version of the False Claims Act lets the government disclaim the public disclosure bar. It now says the bar can apply unless opposed by the government. So the government has an automatic ability to stop the imposition of the public disclosure bar simply by opposing it. So that is a material change in the government's favor that the new False Claims Act has made. Let me just address an underlying premise that we've heard, I think, somewhat repeatedly from the government, Mr. Kirk, and that is this notion that FOIA is simply an automatic process, that agencies are publishing houses or clearinghouses. That notion is utterly belied by the statute and the process itself, and it's utterly belied by the statistics from the Department of Labor in terms of what their responses are and how they do them. In 2008, which was the last year we were able to find statistics for, the Department of Labor, the department at issue here, processed 17,000 FOIA responses. Only 28 percent were granted in full. 32 percent were denied in full, 10 percent based on the statutory exemptions, and 22 percent based on other statutes like the Privacy Act. And 40 percent of those 17,000 responses were partial responses. So we can give you some, but not all. And in fact, the FOIA responses in this very case not only reported that we found some of the VETS 100 reports in some years, we didn't find them in others, but with respect to the VETS 100 reports that were attached, they actually made redactions because those redactions were compelled, according to the chief of compliance and investigations, by the privacy. Sotomayor, Mr. Reese, assuming that the government did all of the steps you took, how does it promote the purposes of FOIA? To find a document created by a third party, underduty or not, that is submitted and contains false statements, how does it promote the government's interests to bar an individual who has personal knowledge about the falsity from bringing a QUICTAM action? Doesn't that seem illogical, meaning the report filed by the employer is not screaming out, I filed a false report. You need some outside knowledge from that statement by the employer to prove the falsity. So how is your rule promoting FOIA's purposes? Well, Justice Sotomayor, in that hypothetical, the relator actually is bringing independent information, and the public disclosure bar would not be invoked, not because the FOIA response isn't a report. It wouldn't be invoked because the allegations and transactions in the QUICTAM complaint were not based on, they were not disclosed in the FOIA response. It furthers the purpose of the statute. Our interpretation furthers the purpose of the statute, because the purpose of the public disclosure bar was to stop QUICTAM suits from being brought by members of the public based on information equally accessible to anyone in the public. I'm still not sure I understand. Here the relator is saying, the statement says we complied with the Military Act, and he says they didn't. I have personal information they didn't, because I know they didn't do X, Y, and Z. Why did we even reach the questions we did if what he's claiming is that he was an original, that he has original knowledge not reflected in the reports? And what I'm saying, Justice Sotomayor, is if that's the case, a court can evaluate, certainly can evaluate whether he is in fact the original source which would take him out from under the public disclosure bar. The court below, the district court, did that and found that he wasn't. Or even before reaching that inquiry, if a relator can say my QUICTAM complaint is not based upon the public disclosure of allegations and transactions in a report, the bar doesn't drop. Our position is the appropriate place for the inquiry that you're worried about is in determining whether there is a disclosure of the relator's allegations or transactions. Sotomayor, I still don't understand how it promotes the purposes of a QUICTAM action to put any kind of bar on a relator who is challenging the creation of a document that's submitted by an independent party to the government. Well, one of the purposes of the public disclosure bar was to stop, and this Court independent or valuable information to contribute. What we're suggesting, if I understand your question. Sotomayor, in fact, that's not true. We have case that because the government's right, Congress changed the law from anything that was in the government's possession and narrowed the scope of the bar. Exactly, Justice Sotomayor, but our position does not resurrect the government knowledge standard that Congress changed in 1986, and it doesn't do so for some very good reasons. First of all, the government knowledge standard that the Court, that the Congress changed in 1986 didn't allow a relator who was actually the original source of the information to bring suit. That was one of the major things that prompted the congressional change in 1986. Secondly, and it's clear from the legislative history in the Senate report, one of the major concerns in the statute in 1986 was the fact that there was a sense that government employees themselves who were knowledgeable about potential contracting fraud were not coming forward. In fact, the Senate report cites a 1983 survey in which 73 percent of 5,000 government employees responded they would not come forward with evidence of contractor fraud. That was a major concern with Congress. Under the old government knowledge standard, the pre-1986 government knowledge standard, those — if those employees came forward, the suit would still be barred because the government, by definition, would have known about the fraud. Under the new statute, not only do you have the original source exception, but if government employees come forward, they are not barred from bringing those key TAM suits. It's a major change, and it's not the resurrection, Justice Sotomayor, of the government knowledge standard. If there are no further questions. Roberts. Thank you, counsel. The case is submitted.